# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ANTHONY COLEMAN AND** **AVA COLEMAN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 16-2537** |
| **SEARS HOME IMPROVEMENT** **PRODUCTS, INC.** | **SECTION: "G"(5)** |

## ORDER

In this litigation, Plaintiffs Anthony Coleman and Ava Coleman ("Plaintiffs") allege that Defendant Sears Home Improvement Products, Inc. ("SHIP") failed to ensure that Plaintiffs' roof was properly installed pursuant to their contract and in accordance with applicable building codes and manufacturer specifications.[1] Currently pending before the Court are SHIP's "Motion to Dismiss"[2] and SHIP's "Motion to Dismiss Second Amended Complaint."[3] Because SHIP filed a second motion to dismiss after Plaintiffs filed an amended complaint,[4] the Court will deny SHIP's first motion to dismiss as moot. Moreover, having considered the second motion to dismiss, the record, the memoranda in support and in opposition, and the applicable law, the Court will deny the motion without prejudice and grant Plaintiffs leave to amend their complaint to address the deficiencies identified by the Court by April 17, 2017.

---

[1] *See* Rec. Doc. 35 at 2–3.

[2] Rec. Doc. 10.

[3] Rec. Doc. 49.

[4] *See* Rec. Doc. 35.

# I. Background

### A.    *Factual Background*

Plaintiffs state that on November 24, 2010, they entered into a contract with SHIP for the installation of an "Owens-Corning 3-tab 25-year shingle roof" on their home.[5] SHIP then hired an independent contractor, Third-Party Defendant Magnolia Roofing & Exteriors, Inc. ("Magnolia"), to perform the installation.[6] SHIP also entered into an agreement with Third-Party Defendant Crawford & Company, D/B/A Strategic Warranty Services ("Crawford") as an independent contractor to perform inspections of roof installations performed by other independent contractors such as Magnolia.[7]

In their amended complaint, Plaintiffs allege that the roof installation began in December 2011 and was never completed or properly installed pursuant to the applicable building codes and manufacturer's specifications.[8] For example, Plaintiffs assert that four nails per shingle were used instead of the required six nails per shingle and that the nails were improperly placed on the shingles.[9] Plaintiffs argue that SHIP breached several duties of care and acted negligently and/or fraudulently by, *inter alia*, allowing a "substandard subcontractor" to install Plaintiffs' roof.[10]

---

[5] Rec. Doc. 35 at 2–3.

[6] *See id.*; Rec. Doc. 68 at 3.

[7] Rec. Doc. 68 at 3.

[8] Rec. Doc. 35 at 2.

[9] *Id.* at 5.

[10] *Id.* at 2–3.

B.      *Procedural History*

Plaintiffs filed a petition in Louisiana state court on March 1, 2016.[11] On March 29, 2016, SHIP removed the case to this Court pursuant to the Class Action Fairness Act.[12] On April 7, 2016, this Court granted SHIP's motion for an extension of time to file responsive pleadings,[13] and on April 25, 2016, SHIP filed its first motion to dismiss.[14] On May 17, 2016, Plaintiffs filed an opposition.[15] With leave of Court, SHIP filed a reply on May 24, 2016.[16]

On July 1, 2016, Plaintiffs filed an amended complaint asserting the same claims but adding an expanded definition of Plaintiffs' proposed class.[17] With leave of Court, SHIP filed a third-party complaint against Crawford and Magnolia on August 10, 2016.[18]

On July 18, 2016, SHIP filed the second instant motion to dismiss Plaintiffs' amended complaint, which incorporated SHIP's previous arguments from its first motion to dismiss.[19] On July 26, 2016, Plaintiffs filed an opposition, which also incorporated Plaintiffs' previous

---

[11] *See id.*

[12] Rec. Doc. 1.

[13] Rec. Doc. 9.

[14] Rec. Doc. 10.

[15] Rec. Doc. 15.

[16] Rec. Doc. 18.

[17] Rec. Doc. 35.

[18] Rec. Doc. 68.

[19] Rec. Doc. 49.

arguments on the first motion to dismiss.[20] With leave of Court, SHIP filed a reply on August 16, 2016.[21]

## II. Parties' Arguments

### A.   SHIP's Arguments in Support of the Second Motion to Dismiss

In its second motion to dismiss, SHIP argues that all of Plaintiffs' claims in the amended complaint should be dismissed pursuant to Rules 10(b) and (12)(b)(6) of the Federal Rules of Civil Procedure.[22] Because Plaintiffs' amended complaint is "substantially identical" to the first petition, SHIP avers, SHIP incorporates the arguments it made in its previous motion to dismiss.[23] SHIP further asserts that Plaintiffs' first opposition memorandum only opposed dismissal of Plaintiffs' negligence claims, and thus SHIP argues that Plaintiffs had "[e]ffectively, but not technically" withdrawn opposition to the dismissal of the remainder of their claims.[24]

In the original motion to dismiss, SHIP contends that Plaintiffs' "shotgun complaint" fails the pleading requirements of Rule 8 and Rule 10(b) and should be dismissed in its entirety.[25] SHIP points out that Plaintiffs failed to attach the contract with SHIP or the 25-year manufacturer's warranty to the amended complaint or cite to any relevant provisions of either document.[26] SHIP avers that Plaintiffs simultaneously allege that the December 2010 roof installation was never

---

[20] Rec. Doc. 52.

[21] Rec. Doc. 74.

[22] Rec. Doc. 49.

[23] Rec. Doc. 49-1 at 2.

[24] *Id.*

[25] Rec. Doc. 10-1 at 2.

[26] *Id.* at 3.

completed and that Plaintiffs also did not discover the alleged defects until late January 2015.[27] SHIP argues that Plaintiffs allege, without any factual basis, that SHIP knew or had constructive knowledge that its third-party contractor would not properly install the roof.[28] SHIP also points out that Plaintiffs failed to identify the specific building codes that SHIP and its contractors allegedly did not follow.[29] SHIP argues that Plaintiffs' "shotgun" pleading does not specify what claims the Plaintiffs are bringing or identify the supporting factual allegations for each of Plaintiffs' claims, which makes it "virtually impossible" to know which facts are intended to support which claims for relief.[30] For example, SHIP asserts that Plaintiffs list five legal duties that SHIP allegedly failed to meet without identifying supporting facts or the sources of the duties, while at other times Plaintiffs fail to tie their alleged facts to a cause of action.[31]

SHIP contends that Plaintiffs allege a redhibition cause of action without including important factual information such as when the alleged defects existed or how SHIP knew or should have known about the alleged defects.[32] Likewise, SHIP argues that Plaintiffs assert a breach of contract claim in the amended complaint, but do not plead how, when, or by whom the contract was breached.[33] SHIP further argues that Rule 9(b) requires allegations of fraud to be

---

[27] *Id.*

[28] *Id.*

[29] *Id.* at 3–4.

[30] *Id.* at 4–6.

[31] *Id.* at 6.

[32] *Id.* at 7.

[33] *Id.*

stated with particularity, and that Plaintiffs "flatly fail to meet these requirements" with their vague assertions regarding alleged misrepresentations.[34]

SHIP avers that Plaintiffs request attorneys' fees and costs, but do not state a statutory or contractual basis for their claim.[35] SHIP also contends that Plaintiffs' "piecemeal negligence allegations" do not cite to any sources of legal duties allegedly owed to Plaintiffs or how SHIP acted negligently.[36] Finally, SHIP asserts that Plaintiffs seek several categories of "non-pecuniary damages," such as emotional and mental suffering and loss of enjoyment of life, but that Plaintiffs failed to state what caused these damages or that SHIP knew such damages would result from the allegedly defective roof.[37] SHIP argues that under Louisiana law, non-pecuniary damages are only allowed in contract cases "when (1) it is clear the contract was intended to satisfy a non-pecuniary interest and (2) the allegedly breaching party knew or should have known the breach would cause such loss."[38]

## B.    *Plaintiffs' Arguments in Opposition to the Second Motion to Dismiss*

In their second  opposition memorandum, Plaintiffs clarify that they have never withdrawn or conceded that any of their claims should be dismissed, and Plaintiffs incorporate their arguments made in opposition to SHIP's first motion to dismiss.[39] In their first opposition memorandum,

---

[34] *Id.* at 8.

[35] *Id.* at 8–9.

[36] *Id.* at 9.

[37] *Id.*

[38] *Id.* (citing La. Civ. Code art. 1998).

[39] Rec. Doc. 52 at 1–2.

Plaintiffs argue that SHIP "knows exactly what [Plaintiffs] are complaining about."[40] Plaintiffs contend that SHIP's designated corporate representative testified in *Glenn Jones v. Sears Home Improvements, et al.*, a separate Louisiana state court lawsuit over SHIP's allegedly defective roofs brought by different plaintiffs, and confirmed that SHIP had instructed SHIP's contractors to only use four nails per shingle, while the manufacturer's specifications and local building codes require six nails per shingle and a proper nailing pattern.[41] Plaintiffs aver that the 25 year manufacturer warranty is void when the roof is installed inadequately.[42] Plaintiffs assert that a "shotgun pleading" is one that lists an excessive number of facts and a number of conclusory legal claims, whereas here Plaintiffs make direct factual allegations regarding the negligent acts or omissions of SHIP.[43] Moreover, Plaintiffs argue that the remedy for shotgun pleadings would be to move for a more definite statement under Rule 12(e) and to provide Plaintiffs with an opportunity to amend their complaint.[44]

Plaintiffs aver that SHIP's "interrogatory style questions" could be reasonably answered in discovery, but "for the sake of judicial efficiency" Plaintiffs answer them in their opposition memorandum.[45] For example, Plaintiffs represent that the defects in the roof were not discovered

---

[40] Rec. Doc. 15 at 1.

[41] *Id.* at 2.

[42] *Id.*

[43] *Id.* at 4.

[44] *Id.* at 5.

[45] *Id.* at 7.

until January 2015 because that was the first time anyone went on the roof to count the number of nails under the shingles.[46]

Likewise, Plaintiffs further allege that SHIP owed Plaintiffs the ordinary duties of a seller and/or contractor to a homeowner to follow the manufacturer's installation requirements, perform their work in a "workmanlike manner," and comply with all applicable codes and laws.[47] According to Plaintiffs, the Louisiana legislature adopted the International Building Code of 2009 ("IBC"), which specifically provides that it is unlawful for any person or corporation to "erect, construct, alter, extend, repair, move, remove, demolish, or occupy" a building or structure in violation of the IBC.[48] Plaintiffs assert that the IBC and Louisiana law also impose a duty on contractors to safeguard public health, safety, and general welfare, as well as safety to life and property.[49] Furthermore, Plaintiffs represent that Louisiana law imposes a duty of care on contractors and inspectors to perform their work in a "good and workmanlike manner," and that a "person who negligently builds something is liable in tort . . . for whatever damages are caused by his negligent construction."[50] Plaintiffs aver that Louisiana courts have held that a contractor "owes third parties a duty to exercise ordinary care and refrain from creating hazardous conditions."[51] Plaintiffs point to several Louisiana state court cases that Plaintiffs contend stand for the proposition that SHIP owed Plaintiffs two duties: (1) to comply with applicable building

---

[46] *Id.*

[47] *Id.*

[48] *Id.* at 12–13.

[49] *Id.* at 13.

[50] *Id.* at 14–15 (citations omitted).

[51] *Id.* at 15 (citing *Wood v. Lindsey*, 2014-0907 (La. App. 4 Cir. 1/28/15), 158 So. 3d 939, 942; *Lyncker v. Design Engineering, Inc.*, 2007-1522, at 3 (La. App. 4th Cir. 6/25/08) 988 So.2d 812, 814).

codes; and (2) "to build the roof or to adequately inspect the workmanship thereof in a manner as to prevent the entry of water into the home."[52]

Additionally, Plaintiffs argue that their damages include suffering from the installation of a defective roof, needing to replace an entire roof only five and a half years after it was installed, and emotional distress from knowing the roof was defective.[53] Plaintiffs attach excerpts of the 2009 International Building Code, which Plaintiffs represent were adopted by local building codes, which requires that roofs be installed with the capability of withstanding 120 mile per hour winds.[54] According to Plaintiffs, the manufacturer's installation requirements require six nails to be installed per shingle to withstand 120 mile per hour winds and require that the roof be compliant with local codes.[55] In addition to pointing to the deposition of SHIP's corporate representative in *Glenn Jones v. Sears Home Improvements, et al.*, Plaintiffs also point out that Tony Milo, a roofing expert, testified that four nails instead of six nails were inadequate and would require the entire roof to be replaced.[56]

---

[52] *Id.* at 16 (citing *Marine Ins. Co.* v. *Strecker*, 234 La. 522, 100 So.2d 493 (La. 1958); *Vicknair* v. *Hibernia Bldg. Corp.*, 479 So.2d 904 (La. 1985); *Winget* v. *Colfax Creosoting Co.*, 626 So.2d 370 (La. App. 3rd Cir. 1993); *Morrison* v. *J.A. Jones Constr. Co.*, 537 So.2d 360 (La. App. 4th Cir. 1988); *Clement*, 528 So.2d at 180; *Oller* v. *Sharp Electric. Inc.*, 451 So.2d 1235, 1236 (La. App. 4th Cir. 1984); *Brock* v. *New Orleans Public Service. Inc.*, 433 So.2d 1083 (La. App. 4th Cir. 1983)).

[53] *Id.*

[54] *Id.* at 8–9 (citing Rec. Doc. 15-9).

[55] *Id.* at 9.

[56] *Id.* at 9–12 (citing Rec. Doc. 15-12).

C.     *SHIP's Arguments in Further Support of the Second Motion to Dismiss*

In response, SHIP contends that Plaintiffs failed to oppose the dismissal of their claims for redhibition, breach of contract, or fraud, and thus they should be dismissed.[57] Moreover, SHIP argues that, pursuant to Federal Rule of Civil Procedure 8(a), Plaintiffs need to plead their negligence claims in their complaint and not in their opposition memorandum.[58] SHIP avers that Plaintiffs' attached exhibits are outside the scope of a Rule 12(b)(6) motion to dismiss and cannot be considered.[59] SHIP further asserts that a party may not rely on new facts alleged in response to a motion to dismiss to defeat the motion.[60] Thus, SHIP argues that Plaintiffs have also failed to state a claim for relief for negligence as well.[61]

### III. Law and Analysis

A.     *Legal Standard on a Motion to Dismiss*

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."[62] A motion to dismiss for failure to state a claim is "viewed with disfavor and is rarely granted."[63] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that

---

[57] Rec. Doc. 18 at 1.

[58] *Id.* at 2.

[59] *Id.*

[60] *Id.* at 3.

[61] *Id.* at 4.

[62] Fed. R. Civ. P. 12(b)(6).

[63] *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

is plausible on its face.'"[64] "Factual allegations must be enough to raise a right to relief above the speculative level."[65] A claim is facially plausible when the plaintiff has pleaded facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[66]

On a motion to dismiss, asserted claims are liberally construed in favor of the claimant, and all facts pleaded are taken as true.[67] However, although required to accept all "well-pleaded facts" as true, a court is not required to accept legal conclusions as true.[68] "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[69] Similarly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice.[70] The complaint need not contain detailed factual allegations, but it must offer more than mere labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[71] That is, the complaint must offer more than an "unadorned, the defendant-unlawfully-harmed-me accusation."[72] From the face of the complaint, there must be enough factual matter to raise a reasonable expectation that discovery will reveal evidence as to each element of

---

[64] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)).

[65] *Twombly*, 550 U.S. at 556.

[66] *Id.* at 570.

[67] *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

[68] *Iqbal*, 556 U.S. at 677–78.

[69] *Id.* at 679.

[70] *Id.* at 678.

[71] *Id.*

[72] *Id.*

11

the asserted claims.[73] If factual allegations are insufficient to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an "insuperable" bar to relief, the claim must be dismissed.[74]

Where a party alleges fraud or mistake, Federal Rule of Civil Procedure 9(b) requires that those allegations "state with particularity the circumstances constituting fraud or mistake."[75] "What constitutes 'particularity' will necessarily differ with the facts of each case . . . ."[76] "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."[77] This Court applies Rule 9(b) to fraud claims "with 'bite' and 'without apology.'"[78] Such claims must contain "simple, concise, and direct" allegations of the "circumstances constituting fraud," which "must make relief plausible, not merely conceivable, when taken as true."[79]

## B.   *Analysis*

First, the Court notes that after SHIP filed its first motion to dismiss, Plaintiffs filed an amended complaint asserting the same claims but adding an expanded definition of Plaintiffs'

---

[73] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009).

[74] *Moore v. Metro. Human Serv. Dep't*, No. 09-6470, 2010 WL 1462224, at * 2 (E.D. La. Apr. 8, 2010) (Vance, C.J.) (citing *Jones v. Bock*, 549 U.S. 199, 215 (2007)); *Carbe v. Lappin*, 492 F.3d 325, 328 n. 9 (5th Cir. 2007).

[75] *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir. 2009).

[76] *Guidry v. Bank of LaPlace,* 954 F.2d 278, 288 (5th Cir. 1992).

[77] *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.,* 975 F.2d 1134, 1139 (5th Cir.1992) (internal quotation marks and citation omitted).

[78] *U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d at 185.

[79] *Id.* at 186.

proposed class.[80] Subsequently, SHIP filed a second motion to dismiss that incorporated the arguments made in its first motion.[81] Accordingly, the Court will deny SHIP's first motion to dismiss as moot.[82]

In its second motion to dismiss, SHIP argues that Plaintiffs' claims should be dismissed pursuant to Rule 12(b)(6), as SHIP contends that Plaintiffs' complaint omits important factual information necessary to support their causes of action and to state a claim upon which relief can be granted.[83]

### 1.      Consideration of Documents outside the Pleadings

As a preliminary matter, the Court notes that Plaintiffs attach seventeen exhibits to their memorandum in opposition to the motion to dismiss.[84] It is well established that, in deciding whether to grant a motion to dismiss pursuant to Rule 12(b)(6), a district court may not "go outside the complaint."[85] If documents outside the pleadings are presented and considered by the court, the motion must be treated as one for summary judgment under Rule 56.[86] By contrast, a district court may decline to consider the submission of extraneous materials and refer solely to the

---

[80] *See* Rec. Docs. 1-1, 35.

[81] Rec. Doc. 49.

[82] Rec. Doc. 10.

[83] Rec. Doc. 49-1 at 1–2 (incorporating previous motion's arguments); Rec. Doc. 10-1 at 2–3.

[84] *See* Rec. Doc. 15.

[85] *Rodriguez v. Rutter*, 310 F. App'x 623, 626 (5th Cir. 2009); *see Carter v. Target Corp.*, 541 F. App'x. 413, 416–17 (5th Cir. 2013); *Mabile v. BP, p.l.c.*, No. 11-1783, 2016 WL 5231839, at *16 (E.D. La. Sept. 22, 2016) (Brown, J.).

[86] Fed. R. Civ. P. 12(d); *see U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 275 (5th Cir. 2015); *Underwood v. Hunter*, 604 F.2d 367, 369 (5th Cir. 1979).

pleadings, thereby preserving the motion as a motion to dismiss under Rule 12(b)(6).[87] However, the Fifth Circuit has recognized that a district court may consider documents attached to the motion to dismiss or the opposition memorandum if they are referred to in the complaint and are central to the claim.[88]

Here, Plaintiffs' amended complaint repeatedly references the manufacturer's specifications,[89] Plaintiffs' contract with SHIP,[90] and the applicable building codes.[91] Moreover, each of these documents are central to Plaintiffs' claims that SHIP improperly installed Plaintiffs' roof in violation of the manufacturer's specifications, their contract, and the applicable building codes.[92] Accordingly, the Court finds that it may consider these documents while deciding the instant motion to dismiss.

However, Plaintiffs also attach to their memorandum a multitude of other documents that were not referenced in the complaint or do not appear central to Plaintiffs' claims. For example,

---

[87] *See U.S. ex rel. Long.*, 798 F.3d at 275 (holding that a district court does not need to convert a motion to dismiss to a motion for summary judgment if it does not rely on a party's submission of extraneous materials).

[88] S*ee Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (holding that a court may consider documents attached to either a motion to dismiss or an opposition to that motion "when the documents are referred to in the pleadings and are central to a plaintiff's claims"); *Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 293–94 (5th Cir. 2008) (considering exhibits attached to an opposition because "[n]o party questions the authenticity of these two documents and both were sufficiently referenced in the complaint to permit their consideration on a motion to dismiss"); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (same).

[89] *See* Rec. Doc. 35 at 3 (alleging that SHIP failed to install Plaintiffs' roof in accordance with the roofing manufacturer's specifications); Rec. Doc. 15-1.

[90] *See* Rec. Doc. 35 at 2–3 (alleging that SHIP entered into an agreement with Plaintiffs for the roof installation and is liable for breach of contract); Rec. Doc. 15-2.

[91] *See* Rec. Doc. 35 at 3 (alleging that SHIP failed to install Plaintiffs' roof in accordance with the applicable building codes); Rec. Doc. 15-9.

[92] *See* Rec. Doc. 35.

14

Plaintiffs attached SHIP's third party contractor's inspection report for Plaintiffs' roof,[93] SHIP's "Service Work Order" for the roof installation,[94] photos of Plaintiffs' roof,[95] two affidavits from Plaintiffs,[96] and a multitude of depositions and expert reports filed in a separate action by different plaintiffs, *Glenn Jones v. Sears Home Improvement Products, Inc.*[97] The Court declines to consider these extraneous materials and will proceed to consider this motion as a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[98]

### 2.     Plaintiffs' Redhibition Claim

SHIP argues that Plaintiffs have alleged a claim of redhibition "without marrying facts with the required elements."[99] In particular, SHIP contends that it is unclear whether the alleged defects existed at the time the roof was delivered or if the alleged defects are "redhibitory defects," or how SHIP allegedly knew or should have known about any supposed defects in the roofs.[100] Plaintiffs did not directly address SHIP's arguments regarding their redhibition claim, but Plaintiffs generally assert that all of their claims were sufficiently plead and should survive SHIP's motion.[101]

---

[93] Rec. Doc. 15-3.

[94] Rec. Doc. 15-4.

[95] Rec. Doc. 15-5.

[96] Rec. Docs. 15-7, 15-8.

[97] Rec. Docs. 15-10, 15-11, 15-12, 15-13, 15-14, 15-15, 15-16, 15-17.

[98] *See* Fed. R. Civ. P. 12(d) (providing that a motion to dismiss must be treated as a motion for summary judgment only when matters outside the pleadings are presented and not excluded by the court); *U.S. ex rel. Long.*, 798 F.3d at 275.

[99] Rec. Doc. 10-1 at 7.

[100] *Id.*

[101] Rec. Doc. 52 at 2.

Plaintiffs contend that SHIP has chosen to "intentionally mislead this court about their feigned ignorance," as SHIP was put "on clear notice" of these types of problems in its roof installations when it was previously sued in *Glenn Jones v. Sears Home Improvement Products, Inc.*, which involved similar allegations.[102] The Court notes that Plaintiffs appear to misinterpret SHIP's motion and the applicable law. Whether SHIP has faced similar litigation in the past and should already be familiar with the allegations asserted by Plaintiffs is not at issue before the Court. Rather, SHIP argues in its motion to dismiss that Plaintiffs have failed to state a claim upon which relief can be granted.[103]   Thus, to survive the motion to dismiss, Plaintiffs' amended complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.[104] That is, the inquiry before the Court on this motion is whether Plaintiffs, and not other litigants in other cases not currently before this Court, have pleaded facts that raise a right to relief above the speculative level and allow the Court to "draw a reasonable inference that the defendant is liable for the misconduct alleged."[105]

Under the Louisiana law of redhibition, "[t]he seller warrants the buyer against redhibitory defects, or vices, in the thing sold."[106] Thus, a claim of redhibition may be asserted to recover damages caused by a breach of that warranty in a sale.[107] Pursuant to Louisiana Civil Code article

---

[102] Rec. Doc. 15 at 5–6.

[103] Fed. R. Civ. P. 12(b)(6).

[104] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)) (quotation marks omitted).

[105] *Id.* at 570.

[106] La. Civ. Code art. 2520.

[107] *Austin v. N. Am. Forest Prod.*, 656 F.2d 1076, 1083 (5th Cir. 1981) (citing *Cotton States Chemical Co. v. Larrison Enterprises, Inc.*, 342 So.2d 1212, 1214–15 (La. App. 2 Cir. 1977); *Crowley Grain Drier, Inc. v. Fontenot*, 132 So.2d 573 (La. App. 3 Cir. 1961)).

2520, a defect is "redhibitory" when: (1) "it renders the thing useless, or its use so inconvenient that it must be presumed that a buyer would not have bought the thing had he known of the defect;" or (2) "without rendering the thing totally useless, it diminishes its usefulness or its value so that it must be presumed that a buyer would still have bought it but for a lesser price." The first type of redhibitory defect gives a buyer the right to obtain rescission of the sale, while the second type of redhibitory defect limits the right of a buyer to a reduction of the price.[108] Louisiana courts have clarified that the term "defect" generally means "a physical imperfection or deformity; or a lacking of necessary components or level of quality."[109]

To assert a claim of redhibition, a buyer must establish (1) that a "redhibitory" defect exists and (2) that the redhibitory defect existed at the time of delivery and was not known or apparent to the buyer.[110] Moreover, pursuant to Louisiana Civil Code article 2522, the buyer must give the seller notice that a redhibitory defect exists and allow the seller an opportunity to make repairs, or else suffer a "diminution of the warranty." However, article 2522 goes on to provide that "[s]uch notice is not required when the seller has actual knowledge of the existence of a redhibitory defect in the thing sold."[111]

---

[108] *Id.*

[109] *Ezell v. Gen. Motors Corp.*, 446 So. 2d 954, 956 (La. App. 3 Cir. 1984); *Williams v. Louisiana Machinery Company, Inc.*, 387 So.2d 8 (La. App. 3 Cir. 1980).

[110] *See* La. Civ. Code arts. 2520, 2521, 2522, 2530 and 2531; *Cain v. Gen. Motors, LLC*, No. 14-1057, 2015 WL 1198591, at *2 (W.D. La. Mar. 16, 2015) (listing elements of a suit for redhibition); *Purvis v. Statewide Trailer Sales, Inc.*, 339 So. 2d 403, 407 (La. App. 1 Cir. 1976) (same). *See also Stroderd v. Yamaha Motor Corp., U.S.A.*, No. 04-3040, 2005 WL 2037419, at *3–4 (E.D. La. Aug. 4, 2005) (Fallon, J.).

[111] La. Civ. Code art. 2522. *See also Pellegrin v. City of Thibodaux*, 2001-2750 (La. App. 1 Cir. 12/31/02), 837 So. 2d 139, 141 (noting that failing to give the seller notice and an opportunity to repair does not foreclose the filing of a lawsuit for redhibition, but merely limits the remedies available to the buyer).

Additionally, when considering whether a claim for redhibition exists, courts in Louisiana distinguish between redhibitory defects arising from a sales contract and those deficiencies arising from a "contract to do," such as a service or construction contract, to which the laws of redhibition would not apply.[112] This is because the underlying transaction for a redhibition action must be a "sale" for a redhibitory defect to exist in the "thing sold."[113] A contract of sale is one "whereby a person transfers ownership of a thing to another for a price in money."[114] When a contract gives rise to multiple obligations, courts in Louisiana typically look to the fundamental or predominating primary obligation of the contract to determine what rules will control.[115]

Louisiana courts consider three factors in determining whether a contract is one of "a sale" or one "to build" or "to do": (1) "in a contract to build, the 'purchaser' has some control over the specifications of the object;" (2) "the negotiations in a contract to build take place before the object is constructed;" and (3) "a building contract contemplates not only that the builder will furnish the materials, but that he will also furnish his skill and labor in order to build the desired object."[116]

---

[112] *See First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390, 403 (E.D. La. 2016) (Engelhardt, J.); *Alonzo v. Chifici*, 526 So. 2d 237, 241 (La. App. 5 Cir. 1988); *see generally* S. Litvinoff, 5 La. Civ. L. Treatise, Law Of Obligations § 1.4 (2d ed.) ("The object of the performance is the criterion for the traditional classification of obligations in three categories, namely, obligations to give, obligations to do, and obligations not to do.").

[113] La. Civ. Code art. 2520; *see Gulf States Utilities Co. v. Ecodyne Corp.*, 635 F.2d 517, 520 (5th Cir. 1981); *Peoples Water Serv. Co. of La. v. Menge Pump & Mach. Co.*, 452 So. 2d 752, 754 (La. App. 5 Cir. 1984).

[114] La. Civ. Code art. 2439; *see Blue v. Schoen*, 556 So. 2d 1364, 1368 (La. App. 5 Cir. 1990), *writ granted, judgment amended*, 559 So. 2d 1347 (La. 1990), *order clarified*, 563 So. 2d 869 (La. 1990).

[115] *Peoples Water Serv. Co. of La.*, 452 So. 2d at 754 (citing 7 S. Litvinoff, La. Civil Law Treatise: Obligations, at 291); *Blue*, 556 So. 2d at 1368.

[116] *Alonzo v. Chifici*, 526 So.2d 237, 241 (La. App. 5 Cir. 1988) (quoting *Acadiana Health Club, Inc. v. Hebert*, 469 So.2d 1186, 1189 (La. App. 3 Cir. 1985)); *see First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp. 3d 390, 403 (E.D. La. 2016) (Engelhardt, J.).

18

Additionally, courts use the "value test" by looking to whether "the labor extended in constructing the item, or the materials incorporated therein, constitute the 'principal value of the contract.'"[117]

For example, in *Rasmussen v. Cashio Concrete Corporation,* the Louisiana First Circuit Court of Appeal considered whether a plaintiff may assert a redhibition action from a contract for the sale and installation of a home sewer treatment plant.[118] The court held that, because the "primary object of the agreement between the parties was the provision of a functioning sewer treatment plant," the contract was categorized as a contract of sale and Louisiana law on redhibition applied.[119] By contrast, in *Kegler's Inc. v. Levy*, the Louisiana Fourth Circuit Court of Appeal determined that a redhibition action could not be asserted based on a contract to furnish and install new carpeting in a bowling alley, as the court held that the contract was not a "contract of sale."[120] The Louisiana court noted that the defendant was required to do more than solely deliver and warrant the carpet, but rather the defendant was obliged to cut the carpeting and padding to fit the floor, sew the seams, and fix the material to the floor.[121] Thus, the Louisiana fourth circuit concluded that the plaintiff's petition stated a cause of action for breach of contract, and not for redhibition.[122]

---

[117] *Alonzo*, 526 So.2d at 241 (quoting *Price v. Huey Childs Builder, Inc.*, 426 So.2d 398 (La. App. 2 Cir. 1983)); *First Am. Bankcard, Inc.*, 178 F. Supp. 3d at 403.

[118] 484 So. 2d 777, 778 (La. App. 1 Cir. 1986).

[119] *Id. See also PPG Indus., Inc. v. Indus. Laminates Corp.*, 664 F.2d 1332, 1336 (5th Cir. 1982) (affirming a district court's finding that defendant's defective panels that were installed directly by plaintiff "fit[] squarely into the definition of redhibition under Louisiana law").

[120] 239 So. 2d 450, 453 (La. App. 4 Cir. 1970).

[121] *Id.* at 452.

[122] *Id.* at 453.

Here, in the amended complaint, Plaintiffs allege that SHIP is liable for the "redhibitory vices in the roofs that it sold . . . as [Plaintiffs] would not have bought Sears roofs had they known that they were not going to be sold building-code compliant roofs, were not built to withstand expected coastal winds, and had no manufacturer warranty, as a result of improper installation."[123] Moreover, Plaintiffs aver that "SHIP knew, or had constructive knowledge, that the 3-tab roofs it sold were not building code compliant the way SHIP instructed its subcontractors to install it, with 4 nails per shingle instead of 6, where the nails were placed, and the type of ridge cap used and the nailing patterns of the ridge cap."[124]

However, Plaintiffs have not alleged sufficient facts to show that a redhibitory defect existed or that such a defect existed at the time of delivery. In particular, Plaintiffs have failed to allege sufficient facts to demonstrate that Plaintiffs' contract with SHIP was a contract of sale to which the law of redhibition would apply. As stated above, the factors considered by courts to determine if a contract of sale existed involve a fact-intensive inquiry into the parties' prior negotiations and the content of the contract.[125] Here, the Court notes that the contract at issue appears to have required SHIP to remove Plaintiffs' old roof, inspect for rotten wood, clean up around the work site, and install new shingles, metal drip edges, vent covers, and an attic ventilation system.[126] However, without further information, the Court cannot determine what the primary obligation of the contract was or find that a cause of action for redhibition may properly

---

[123] Rec. Doc. 35 at 6.

[124] *Id.* at 5.

[125] *Alonzo v. Chifici*, 526 So.2d 237, 241 (La. App. 5 Cir. 1988) (quoting *Acadiana Health Club, Inc. v. Hebert*, 469 So.2d 1186, 1189 (La. App. 3 Cir. 1985)); *see First Am. Bankcard, Inc. v. Smart Bus. Tech., Inc.*, 178 F. Supp.3d 390, 403 (E.D. La. 2016) (Engelhardt, J.).

[126] Rec. Doc. 15-2 at 1.

20

be asserted against SHIP. Therefore, even construing Plaintiffs' complaint liberally and accepting all allegations as true, the Court concludes that Plaintiffs have failed to allege sufficient facts to state a claim of redhibition against SHIP.

Nonetheless, the Court notes that Plaintiffs request that, if the Court finds that SHIP's motion to dismiss has merit, Plaintiffs should be allowed leave to amend their complaint.[127] Dismissal is a harsh remedy, and the Court is cognizant of the Fifth Circuit's instruction that a motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted."[128] Short of granting a motion to dismiss, a court may grant a plaintiff leave to amend his or her complaint.[129] Here, Plaintiffs could plausibly allege facts that would allow the Court to draw a "reasonable inference" that SHIP is liable under Louisiana law of redhibition, and SHIP has not pointed to any authority to the contrary. Accordingly, the Court, in its discretion, will grant Plaintiffs leave to amend their complaint by April 17, 2017, to address the issues identified by the Court. If Plaintiffs are unable to do so by the Court's deadline, the Court will dismiss their claim of redhibition.

### 3. Breach of Contract

Next, SHIP argues that Plaintiffs' breach of contract claim should be dismissed, as SHIP cannot determine which facts go to such a claim.[130] SHIP contends that Plaintiffs state that a contract between Plaintiffs and SHIP existed, but that "SHIP cannot discern how, when, or by whom the Coleman Contract was breached or what damages (if any) Plaintiffs suffered as a result

---

[127] Rec. Doc. 15 at 2; Rec. Doc. 52 at 2.

[128] *Beanal v. Freeport-McMoran, Inc,* 197 F.3d 161, 164 (5th Cir. 1999).

[129] *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) ("This standard 'evinces a bias in favor of granting leave to amend. The policy of the Federal Rules is to permit liberal amendment.'") (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981)).

[130] Rec. Doc. 10-1 at 7.

of the breach."[131] Plaintiffs did not directly address SHIP's arguments, but Plaintiffs generally assert that all of their claims were sufficiently plead and should survive SHIP's motion.[132]

Under Louisiana law, to assert a breach of contract claim, the plaintiff must show: (1) the obligor undertook an obligation to perform; (2) the obligor failed to perform the obligation, resulting in a breach; and (3) the failure to perform resulted in damages to the obligee.[133] In the amended complaint, Plaintiffs allege that: (1) Plaintiffs entered into an agreement with SHIP for the sale and installation of an Owens-Corning 3-tab 25-year shingle roof for $12,000; (2) SHIP failed to complete the roof installation and/or properly install the roof, such as by using an insufficient number of nails per shingle in contradiction to local building codes and the manufacturer's specifications; and (3) Plaintiffs suffered damages as a result.[134] Accordingly, construing the complaint liberally, the Court finds that Plaintiffs have plausibly alleged sufficient facts to support a claim for breach of contract.

While SHIP criticizes Plaintiffs for not providing further detail in the amended complaint, the Court notes that, pursuant to Rule 8 of the Federal Rules of Civil Procedure, the complaint need only contain a "short and plain statement of the claim" showing that Plaintiffs are entitled to relief. As the Supreme Court recognized in *Twombly* and *Iqbal*, Rule 8 does not require "detailed factual allegations, as long as the plaintiff's complaint contains sufficient factual matter to state a

---

[131] *Id.*

[132] Rec. Doc. 52 at 2.

[133] *Sanga v. Perdomo*, 14-609 (La. App. 5 Cir. 12/30/14), 167 So. 3d 818, 822; *see* La. Civ. Code art. 1994; *Favrot v. Favrot*, 10–0986 (La. App. 4 Cir. 02/09/11), 68 So.3d 1099, 1109.

[134] Rec. Doc. 35 at 2–3, 13.

facially plausible claim."[135]  Plaintiffs have done so here. Therefore, the Court will deny SHIP's motion to dismiss Plaintiffs' breach of contract claim.

### 4.      Fraud

SHIP contends that Plaintiffs "vaguely refer" to alleged misrepresentations made by SHIP and its employees without specifying who made the representations or when and where they were made.[136] Thus, SHIP argues that Plaintiffs fail to meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.[137] Plaintiffs also did not directly address SHIP's arguments regarding their fraud claim, but Plaintiffs generally assert that all of their claims were sufficiently plead and should survive SHIP's motion.[138]

Under Louisiana law, fraud is defined as "a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other."[139] To state a claim for fraud or intentional misrepresentation, a plaintiff must allege: (1) a misrepresentation of a material fact; (2) made with intent to deceive; and (3) causing justifiable reliance with resultant injury.[140] To assert a claim for negligent misrepresentation in Louisiana, the plaintiff must demonstrate: (1) the defendant had a legal duty to supply correct information; (2) there was a breach of that duty, which can occur by omission as

---

[135] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[136] Rec. Doc. 10-1 at 8.

[137] *Id.*

[138] Rec. Doc. 52 at 2.

[139] La. Civ. Code art. 1953.

[140] *Kadlec Medical Center v. Lakeview Anesthesia Assoc.*, 527 F.3d 412, 418 (5th Cir. 2008); *Boutain v. Radiator Specialty Co.*, No. 11-1907, 2011 WL 6130754, at *2 (E.D. La. Dec. 8, 2011) (Vance, J.); *Gonzales v. Gonzales*, 2008-0258 (La. App. 4 Cir. 9/30/09), 20 So. 3d 557, 563.

well as by affirmative misrepresentation; and (3) the breach caused damages to the plaintiff based on the plaintiff's reasonable reliance on the misrepresentation.[141]

Pursuant to Rule 9(b) of the Federal Rules of Civil Procedure, a plaintiff alleging fraud or mistake "must state with particularity the circumstances constituting fraud or mistake."[142] Thus, in the Fifth Circuit, allegations of fraud "must meet a higher, or more strict, standard than the basic notice pleading required by Rule 8."[143] "At a minimum, Rule 9(b) requires allegations of the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."[144]

In the amended complaint, Plaintiffs assert that SHIP "knowingly and fraudulently represented to Plaintiffs . . . that they had purchased a valid warranty" when SHIP's alleged conduct made the warranty invalid.[145] Plaintiffs further contend that SHIP failed to inform Plaintiffs that the roof installed did not comply with the building codes and the manufacturer's specifications or that it was not suitable for its intended purposes.[146] In sum, Plaintiffs allege that

---

[141] *Kadlec Medical Center*, 527 F.3d at 418; *Pastor v. Lafayette Bldg. Ass'n*, 89-462 (La. App. 3 Cir. 10/3/90), 567 So. 2d 793, 796. *See generally Daye v. Gen. Motors Corp.*, 97-1653 (La. 9/9/98), 720 So. 2d 654, 659 ("In general, the courts of this state have recognized that La. Civ. Code arts. 2315 and 2316, the code articles defining tort law, encompass an action for negligent misrepresentation.").

[142] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008) (explaining that both state-law fraud claims and federal securities claims are subject to the heightened pleading requirements of Rule 9(b)) (citing *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) ("We see no principled reason why the state claims of fraud should escape the pleading requirements of the federal rules . . . .")); *Boutain v. Radiator Specialty Co.*, No. 11-1907, 2011 WL 6130754, at *2 (E.D. La. Dec. 8, 2011) (Vance, J.) ("State-law fraud claims, such as those alleged by plaintiffs here, are subject to the pleading requirements of Federal Rule of Civil Procedure 9(b).").

[143] *See Shushany v. Allwaste, Inc.*, 992 F.2d 517, 521 (5th Cir. 1993).

[144] *Id.* (quoting *Tel–Phonic Services, Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)); *see also U.S. ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009).

[145] Rec. Doc. 35 at 4.

[146] *Id.* at 5.

SHIP "made an intentional or negligent misrepresentation" to Plaintiffs "which constitutes fraud and/or fraudulent inducement to contract."[147]

Without additional factual allegations, the Court finds that the amended complaint does not meet the particularity requirement of Rule 9(b). Plaintiffs fail to make sufficient factual allegations regarding the "time, place, and contents" of any alleged misrepresentations or fraudulent statements by SHIP.[148] Accordingly, the Court determines that Plaintiffs have failed to plead sufficient facts to state a claim against SHIP for fraud and/or negligent misrepresentation.

Nonetheless, as noted *supra*, Plaintiffs request that, if the Court determines that SHIP's motion to dismiss should be granted, Plaintiffs should be allowed leave to amend their complaint.[149] As the Fifth Circuit has repeatedly held, a plaintiff's failure to meet Rule 9's heightened pleading requirements "should not automatically or inflexibly result in dismissal of the complaint," as a plaintiff should be granted leave to amend unless amendment would be futile or the plaintiff has already been afforded repeated opportunities to amend.[150] Accordingly, the Court will grant Plaintiffs leave to amend their complaint by April 17, 2017, to address the issues identified by the Court. If Plaintiffs are unable to do so by the Court's deadline, the Court will dismiss their claims.

---

[147] *Id.*

[148] *Shushany*, 992 F.2d at 521.

[149] Rec. Doc. 15 at 2; Rec. Doc. 52 at 2.

[150] *Hart v. Bayer Corp.*, 199 F.3d 239, 248 (5th Cir. 2000); *See Cates v. International Telephone and Telegraph Corp.*, 756 F.2d 1161, 1180 (5th Cir. 1985) ("But such deficiencies do not normally justify dismissal of the suit on the merits and without leave to amend, at least not in the absence of special circumstances."); *U.S. ex rel. Stewart v. The Louisiana Clinic*, No. 99-1767, 2002 WL 257690, at *5 (E.D. La. Feb. 22, 2002) (Engelhardt, J.).

### 5.    Negligence

SHIP asserts that Plaintiffs' negligence claims should be dismissed because Plaintiffs have failed to sufficiently allege how SHIP was negligent, the sources of the legal duties it allegedly owed to Plaintiffs, or what damages were caused.[151] In response, Plaintiffs argue that SHIP owed Plaintiffs a number of duties which were violated by SHIP's negligent conduct.[152] For example, Plaintiffs aver that Louisiana law imposes a duty on builders to protect the health and safety of occupants of buildings and requires "reasonable safeguards for health, safety, welfare, comfort and security."[153]  Moreover, Plaintiffs point out that Louisiana law states that contractors owe a duty to perform their work in a "good and workmanlike manner," and that a person who negligently builds something is liable for the damages caused by his negligent construction.[154] Likewise, Plaintiffs contend that roof contractors must perform their work in accordance with industry standards and the manufacturer's specifications.[155] Thus Plaintiffs aver that SHIP violated these duties to (1) comply with local building codes and (2) properly build the roof or adequately inspect the workmanship of the roof installation when SHIP installed a deficient roof.[156]

Louisiana courts conduct a "duty-risk analysis" to determine whether a defendant is liable for negligence.[157] To prevail on a negligence claim, a plaintiff must prove five elements: (1) the

---

[151] Rec. Doc. 10-1 at 9.

[152] Rec. Doc. 15 at 12–18.

[153] *Id.* at 12 (citing La. Rev. Stat. § 40:1730.21).

[154] *Id.* at 14–15 (citing La. Civ. Code arts. 2315, 2762).

[155] *Id.* at 16.

[156] *Id.*

[157] La. Civ. Code art. 2315; *Lemann v. Essen Lane Daiquiris, Inc.*, 2005-1095 (La. 3/10/06), 923 So. 2d 627, 632–33 (citing *Mathieu v. Imperial Toy Corporation*, 94-0952 (La.11/30/94), 646 So.2d 318, 321); *see also Nagle v.*

defendant had a duty to conform his conduct to a specific standard of care; (2) the defendant's conduct failed to conform to the appropriate standard of care; (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) the defendant's conduct caused actual damages.[158]

First, the threshold question is whether SHIP owed Plaintiffs a duty under "any law (statutory, jurisprudential, or arising from general principles of fault)."[159] Plaintiffs point to a number of sources of duties owed to Plaintiffs by SHIP, including Louisiana Civil Code article 2315, Louisiana's general negligence statute.[160] Pursuant to article 2315, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."[161] As Louisiana courts have recognized, a contractor who negligently constructs or builds something is liable in tort under Louisiana Civil Code article 2315 for whatever damages are caused, and the contracts owes a duty "to perform in a workmanlike manner free from defects attributable to either faulty materials or poor workmanship."[162] Accordingly, the Court finds that the element of duty is met.

---

*Gusman*, 61 F. Supp. 3d 609, 620 (E.D. La. 2014) (Vance, J.).

[158] *Lemann*, 923 So. 2d at 633.

[159] *Id.* (citing *Meany v. Meany*, 94-0251 (La.7/5/94), 639 So.2d 229, 233; *Faucheaux v. Terrebonne Consolidated Government*, 615 So.2d 289, 292 (La. 1993)).

[160] Rec. Doc. 15 at 14–15.

[161] La. Civ. Code art. 2315.

[162] *Clement v. State Through Dep't of Transp. & Dev.*, 528 So. 2d 176, 179–80 (La. App. 1 Cir. 1988) (citing *Marine Insurance Company v. Strecker*, 234 La. 522, 100 So.2d 493 (1958); *Kendrick v. Mason*, 234 La. 271, 99 So.2d 108 (1958); *Cell-O-Mar, Inc. v. Gros*, 479 So.2d 386 (La. App. 1 Cir. 1985); *Oller v. Sharp Electric, Inc.*, 451 So.2d 1235 (La. App. 4 Cir. 1984)).

Second, Plaintiffs allege that SHIP breached its duties to Plaintiffs.[163] A breach of duty is "the failure to exercise reasonable care under the circumstances."[164] Here, Plaintiffs allege in the amended complaint that SHIP failed to meet its duties in a number of ways, including: (1) failing to install the Plaintiffs' roof according to the local building codes or the manufacturer's specifications or with the proper materials and techniques required; (2) failing to provide proper instructions to its inspectors or to ensure the third-party contractors properly installed Plaintiffs' roof; and (3) hiring a subcontractor who SHIP knew or should have known did not possess the necessary skill or knowledge to install the roof correctly.[165] Thus, construing the amended complaint liberally and accepting all allegations as true, the Court finds that the element of breach of duty is met.

Third, Plaintiffs aver that SHIP's negligence was the cause-in-fact and legal cause of Plaintiffs' injuries, which Plaintiffs assert satisfies the third and fourth elements of a negligence claim.[166] Under Louisiana law, determining if the defendant's conduct was the cause-in-fact involves a "but for" inquiry, "which tests whether the accident would or would not have happened but for the defendant's substandard conduct."[167] The fourth element of negligence, legal cause (also called "scope of duty"), asks whether "the particular risk falls within the scope of the duty . . . [and if] the enunciated rule extends to or is intended to protect this plaintiff from this type of harm

---

[163] Rec. Doc. 35 at 3–4.

[164] *D.C. v. St. Landry Par. Sch. Bd.*, 2000-01304 (La. App. 3 Cir. 3/7/01), 802 So. 2d 19, 22 (citing Frank L. Maraist & Thomas C. Galligan, Louisiana Tort Law § 6–1, at 139 (1996)); *see also Nagle*, 61 F. Supp. 3d at 620.

[165] Rec. Doc. 35 at 3–7.

[166] *Id.* at 13.

[167] *Perkins v. Entergy Corp.*, 782 So.2d 606, 611 (La. 2001); *see also Nagle*, 61 F. Supp. 3d at 622.

arising in this manner."[168] Here, Plaintiffs have plausibly alleged that SHIP was both the cause-in-fact and the legal cause of Plaintiffs' injuries, as Plaintiffs assert that their defective roof was the direct result of SHIP's allegedly negligent acts and that SHIP's conduct falls within the scope of its duties.[169] Accordingly, for this motion to dismiss, the Court finds that both the third and fourth elements of negligent are met.

Finally, Plaintiffs allege that SHIP's conduct caused Plaintiffs actual damages, including the costs of replacing the defective roof, the costs of repairs, and other such injuries.[170] Accordingly, the Court finds that the fifth element of Plaintiffs' negligence claim is met. Therefore, the Court finds that Plaintiffs have plausibly alleged sufficient facts to state a claim for negligence against SHIP. Thus, the Court will deny SHIP's motion to dismiss Plaintiff's negligence claims.

### 6.     Attorneys' Fees and Costs

SHIP also asserts that Plaintiffs' request for attorneys' fees and costs should be dismissed.[171] SHIP argues that Louisiana law provides that damages for attorneys' fees are not allowed unless they are authorized by statute or contract, and that Plaintiffs have not alleged a statutory or contractual basis to support their request here.[172] Plaintiffs did not respond to SHIP's argument.[173] Moreover, in their opposition memorandum to the second motion to dismiss,

---

[168] *Faucheaux v. Terrebonne Consol. Gov't*, 615 So.2d 289, 293–94 (La. 1993) (citations omitted); *see also Nagle*, 61 F. Supp. 3d at 622; *Fowler v. Roberts*, 556 So.2d 1, 6 (La. 1989).

[169] Rec. Doc. 35 at 13.

[170] *Id.*

[171] Rec. Doc. 10-1 at 8.

[172] *Id.*

[173] Rec. Doc. 15.

Plaintiffs only stated that they have not waived their claims for "redhibition, fraud, damages, negligence and breach of contract," but do not mention their original request for attorneys' fees.[174]

Under Louisiana law, a litigant typically bears his or her own attorneys' fees unless a contract or statute explicitly authorizes recovery.[175] In the amended complaint, Plaintiffs allege that because SHIP "fraudulently and knowingly sold non-building code complaint roofs with redhibitory vices" and violated their contract with Plaintiffs, SHIP is liable for attorneys' fees and costs.[176] The Court notes that Louisiana courts have held that, unless a contract contains a specific provision for attorneys' fees, a plaintiff will not be awarded attorneys' fees on a breach of contract claim.[177] The Court further notes that Louisiana Civil Code article 2545 authorizes the recovery of reasonable attorneys' fees for redhibition claims; however, the Court found *supra* that Plaintiffs failed to sufficiently allege a claim for redhibition in the amended complaint. Additionally, while claims seeking rescission of a contract based on fraud may receive attorneys' fees pursuant to Louisiana Civil Code article 1958,[178] it is not clear that Plaintiffs are asserting such a claim here. Moreover, the Court also found *supra* that Plaintiffs' fraud claims failed to meet the heightened requirements of Rule 9(b). Accordingly, the Court finds that Plaintiffs have failed to state claim

---

[174] Rec. Doc. 52 at 2.

[175] *See* La. Civ. Code art. 1920; 21 La. Civ. L. Treatise, Louisiana Lawyering § 16.1. *See also F.D.I.C. v. Barton,* 233 F.3d 859, 865 (5th Cir. 2000) ("In Louisiana, attorney's fees usually are *not* allowed in civil actions in the absence of a statute or contract."); *Morris v. Wyeth, Inc.*, No. 09-0854, 2009 WL 5342507, at *3 (W.D. La. Nov. 18, 2009); *Kinsinger v. Taco Tico, Inc.*, 861 So.2d 669, 671–672 (La. App. 5 Cir. 2003).

[176] Rec. Doc. 35 at 14.

[177] *See N-Y Assocs., Inc. v. Bd. of Comm'rs of Orleans Par. Levee Dist.*, 2004-1598 (La. App. 4 Cir. 2/22/06), 926 So. 2d 20, 27 (citing *Frank L. Beier Radio, Inc. v. Black Gold Marine, Inc.*, 449 So.2d 1014, 1015 (La. 1984); *Lamonte v. Premier Sales, Inc.*, 00-298, 00-299 (La. App. 5 Cir. 10/18/00), 776 So.2d 493, 497l *Willett v. Premier Bank*, 97-187 (La. App. 3 Cir. 6/4/97), 696 So.2d 196, 201).

[178] *See Stutts v. Melton*, 2013-0557 (La. 10/15/13), 130 So. 3d 808, 814.

for attorneys' fees. However, based on the same reasoning above, the Court will, in its discretion, grant Plaintiffs leave to amend their complaint to sufficiently allege grounds on which attorneys' fees may be awarded under Louisiana law in this matter.

### 7.    General Compensatory Damages

Finally, SHIP argues that Plaintiffs' claims for emotional and mental suffering and anguish and loss of enjoyment of life should be dismissed.[179] SHIP contends that Plaintiffs' complaint "tell us nothing about these damages, what caused them, or that SHIP knew . . . an allegedly defective roof would cause such losses."[180] SHIP avers that these are "non-pecuniary damages," which are only allowed in contract cases when (1) the contract was intended to satisfy a non-pecuniary interest and (2) the defendant knew or should have known the breach would cause such loss.[181] Plaintiffs did not directly respond to SHIP's arguments, but generally asserted that they are not dropping any of their requests for damages.[182]

The Court first notes that SHIP appears to ignore the fact that Plaintiffs have also asserted negligence claims in addition to their breach of contract claim. Pursuant to Louisiana Civil Code article 2315, a tortfeasor must compensate the tort victim for all damages he or she has caused.[183] The tortfeasor is thus liable for general compensatory damages, which include mental pain or suffering and loss of enjoyment of life.[184] The Louisiana Supreme Court has held that

---

[179] Rec. Doc. 10-1 at 9.

[180] *Id.*

[181] *Id.* at 9–10.

[182] Rec. Doc. 52 at 2.

[183] *See* La. Civ. Code art. 2315 ("Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it"); *McGee v. A C And S, Inc.*, 2005-1036 (La. 7/10/06), 933 So. 2d 770, 773.

[184] *McGee*, 933 So. 2d at 773 (citing *Duncan v. Kansas City S. R.R.*, 00–0066, (La.10/30/00), 773 So. 2d 670,

compensatory damages are distinct from nonpecuniary damages, which are damages "of a moral nature."[185] Thus, if proven, Louisiana law authorizes Plaintiffs to recover damages on their negligence claims for their alleged emotional and mental suffering and anguish and loss of enjoyment of life. By contrast, SHIP has pointed to no authority to support its argument that Plaintiffs cannot recover such damages on the negligence claims they have asserted. Accordingly, the Court will deny SHIP's motion to dismiss Plaintiffs' request for emotional and mental suffering and anguish and loss of enjoyment of life.

## IV. Conclusion

As stated *supra*, because SHIP filed a second motion to dismiss after Plaintiffs filed an amended complaint, the Court will deny SHIP's first motion to dismiss as moot.[186] With regard to SHIP's second motion to dismiss, the Court concludes, based on the foregoing, that Plaintiffs have alleged sufficient facts to state a claim for breach of contract and a claim for negligence. SHIP has not pointed to any authority demonstrating that Plaintiffs' claims for breach of contract and negligence should be dismissed pursuant to Rule 12(b)(6). Moreover, the Court determines that, if proven, Plaintiffs' negligence claims entitle Plaintiffs to recover damages for their alleged emotional and mental suffering and anguish and loss of enjoyment of life. SHIP has failed to identify any authority to show that Plaintiffs are barred from recovering such damages.

---

682; *Boswell v. Roy O. Martin Lumber Co., Inc.,* 363 So.2d 506, 507 (La. 1978); *Anderson v. Welding Testing Lab., Inc.,* 304 So.2d 351, 352 (La. 1974)).

[185] *Young v. Ford Motor Co.*, 595 So. 2d 1123, 1128 & n.8 (La. 1992); *see also Duncan*, 773 So. 2d at 682 ("General damages are those which may not be fixed with pecuniary exactitude; instead, they 'involve mental or physical pain or suffering, inconvenience, the loss of intellectual gratification or physical enjoyment, or other losses of life or life-style which cannot be definitely measured in monetary terms.'").

[186] Rec. Doc. 10.

However, the Court also finds that Plaintiffs have not made sufficient factual allegations to support a claim for redhibition pursuant to Rule 12(b)(6). Plaintiffs have not alleged sufficient facts to determine whether a redhibition defect existed at the time of delivery or that a claim of redhibition may be asserted based on Plaintiffs' contract with SHIP. The Court further determines that Plaintiffs have failed to satisfy the heightened pleading requirements of Rule 9 to assert a fraud claim, as Plaintiffs have not sufficiently alleged the "time, place, and contents" of any alleged misrepresentations or fraudulent statements by SHIP. Additionally, the Court finds that Plaintiffs have not identified a contractual provision or statute that would authorize the recovery of attorneys' fees based on their remaining causes of action.

Nonetheless, because dismissal is a harsh remedy, the Court will deny SHIP's motion and grant Plaintiffs leave to amend their complaint by April 17, 2017, to address the issues identified by the Court in Plaintiffs' claims for redhibition and fraud and Plaintiffs' request for attorneys' fees. If Plaintiffs are unable to do so, the Court will dismiss their claims of redhibition and fraud and their request for attorneys' fees. Accordingly,

**IT IS HEREBY ORDERED** that Defendant SHIP's "Motion to Dismiss"[187] Plaintiffs' original Petition is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Defendant SHIP's "Motion to Dismiss Second Amended Complaint"[188] is **DENIED WITHOUT PREJUDICE**.

---

[187] Rec. Doc. 10.

[188] Rec. Doc. 49.

**IT IS FURTHER ORDERED** that Plaintiffs are granted leave to amend their complaint by April 17, 2017, to address the issues identified by the Court. If Plaintiffs are unable to cure the deficiencies in the complaint by that time, upon motion of a party the Court will dismiss the following claims: (1) Plaintiffs' claim of redhibition; (2) Plaintiffs' claim of fraud; and (3) Plaintiffs' request for attorneys' fees.

**NEW ORLEANS, LOUISIANA**, this  21st  day of March, 2017.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**